## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**TIMOTHY KNAPP**
95 Beverly Drive
Kintnersville, PA 18930

*Plaintiff,*

vs.

**THOMPSON GROUP, INC.**
50 West Swamp Road
Doylestown, PA 18901

-and-

**THE THOMPSON ORGANIZATION,**
**INC.**
50 West Swamp Road
Doylestown, PA 18901

-and-

**JOHN G. THOMPSON**
50 West Swamp Road
Doylestown, PA 18901

*Defendants.*

No. 2:22-cv-03758-RAL

CIVIL ACTION

**JURY TRIAL DEMANDED**

## FIRST AMENDED CIVIL ACTION COMPLAINT[1]

Plaintiff, Timothy Knapp (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    Plaintiff has initiated this action to redress violations by Thompson Group, Inc., The Thompson Organization, Inc., and John G. Thompson (hereinafter collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the

---

[1] Plaintiff files this First Amended Civil Action Complaint pursuant to F.R.C.P. 15(a)(2) (consent of opposing party). Counsel for Defendants consented to Plaintiff amending his complaint on May 19, 2023.

Pennsylvania Human Relations Act ("PHRA").  Plaintiff was unlawfully terminated by Defendants, and he suffered damages more fully described/sought herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7.      Plaintiff is an adult who resides the above-captioned address.

8.      Thompson Group, Inc. (hereinafter "Defendant TG") is a corporation which operates several automotive dealerships in Pennsylvania, with an address set forth in the above caption.

9.      The Thompson Organization, Inc. (hereinafter "Defendant TO") is a corporation which operates several automotive dealerships in Pennsylvania, with an address set for the in the above caption.

10.     John G. Thompson (hereinafter "Defendant JT"), owner/operator of Defendants TG and TO, is a high-level manager and decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendants TG and TO, including but not limited to overall hiring, firing, discipline, compensation, and other business operations (among other duties).

11.     Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

12.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## ADMINISTRATIVE REMEDIES

13.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

14.     Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under the ADA and the PHRA.

15.     Plaintiff filed a timely written charge of discrimination with the Equal Employment Opportunity Commission alleging violations of said statute on May 13, 2022.

16.     Plaintiff's charge was cross-filed with the Pennsylvania Human Relations Commission.

17.     The instant action is timely because it was initiated within ninety ("90") days after the receipt of a Right to Sue letter from the EEOC mailed on or about August 15, 2022.

18.     Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

19.     Plaintiff has properly exhausted his administrative proceedings regarding his PHRA claims by dual-filing his Charge of Discrimination with the PHRC and by waiting at least one year since the filing before asserting his PHRA claims.

## FACTUAL BACKGROUND

20.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21.     Plaintiff was hired by Defendants on December 11, 2017, as a General Contractor, overseeing several of Defendants' Pennsylvania properties.

22.     Plaintiff was originally hired and supervised by John H. ("Jack") Thompson, until his death in or about December of 2020, after which Plaintiff began to fall under the supervision of his son, Defendant JT.

23.     Throughout Plaintiff's tenure with Defendant, he was a hard-working employee who performed his job well.

24.     Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to, hypertension and cardiomyopathy (and associated complications), which (at times) limited his ability to perform some daily life activities.

4

25.    Despite Plaintiff's aforesaid disabilities and limitations, he was still able to perform the essential functions of his position well; however, he did require some reasonable accommodations.

26.    For example, in or about the end of July of 2021, Plaintiff requested/was approved for 12 weeks of FMLA leave to care for/treat for complications associated with his aforesaid serious health conditions.

27.    Throughout his aforesaid medical leave, Plaintiff kept Defendants' management, including but not limited to Defendant JT and Human Resources ("HR") Director, Jennifer May (hereinafter "May"), apprised of the status of his serious health conditions, including his anticipated return to work date of October 20, 2021.

28.    In fact, leading up to Plaintiff's anticipated return to work, he reached out to May to inform her that his doctor was releasing him to return to work, without restrictions, on or about October 20, 2021.

29.    During the aforesaid conversation with May (*see* Paragraph 21, *supra*), May informed Plaintiff that he would also need to be seen and cleared by the company doctor before being permitted to return to work.

30.    It was Plaintiff's understanding at the time of his phone conversation with May, that his doctor had forwarded to Defendants a copy of the October 20, 2021 letter releasing him to return the work.

31.    Thereafter, on or about Friday, October 22, 2021, Plaintiff met with May about returning to work, wherein she informed Plaintiff that his FMLA leave had been exhausted as of that day, and that he could return to work on Monday, October 25, 2021, with a note from his doctor.

32.    Plaintiff reached out to his doctor's office late that same day (October 22, 2021) to

confirm that they had provided the note to Defendants and was advised by the receptionist that it was in his file, and she would send it out.

33.     While awaiting confirmation of Defendants' receipt of Plaintiff's doctor's note, as well as confirmation of an appointment with Defendants' own doctor (which May had stated was required prior to Plaintiff's return), Plaintiff was abruptly terminated by letter from May on October 26, 2021, which stated that Defendants were unable "to hold [his] job as a General Contractor any longer."

34.     Plaintiff then reached out and met with Defendant JT on or about October 27, 2021, wherein Plaintiff provided Defendant JT a copy of his doctor's note and informed Defendant JT that he had never received confirmation from May about a scheduled evaluation with the company's doctor.

35.     In response to Plaintiff providing his doctor's note to Defendant JT on or about October 27, 2021, Defendant JT simply ignored Plaintiff's doctor's note, stated that May had "handled that," and confirmed to Plaintiff that he was still terminated.

36.     Defendants terminated Plaintiff without engaging in any interactive process or allowing Plaintiff the simple medical accommodation of being permitted to remain out of work a few extra days longer than his FMLA expiration, while Defendants sorted out what they claimed they required on their end for Plaintiff to return.

37.     Moreover, as evidence of further retaliation by Defendants, following Plaintiff's abrupt termination, he was informed that he must immediately vacate the house that he had been leasing on Defendants' property, which was incredibly stressful and further exacerbated his aforesaid serious health conditions.

38.     Plaintiff believes and therefore avers that he was terminated because of (1) his known, perceived, and/or record of disabilities; (2) in retaliation for requesting/utilizing reasonable

medical accommodations; and/or (3) Defendants' complete and utter failure to accommodate his health conditions (set forth *supra*).

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)
-Against Defendants TG and TO Only-

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

41.     Plaintiff kept Defendants' management informed of his serious medical conditions and need for medical treatment and other accommodations.

42.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

43.     Plaintiff requested reasonable accommodations from Defendants, including but not limited to a medical leave of absence to care for and treat his serious health conditions.

44.     Plaintiff was terminated from his employment with Defendants in close proximity to requesting/utilizing reasonable accommodations and while still out on medical leave.

45.     Prior to abruptly terminating Plaintiff's employment, Defendants failed to (1) engage in the interactive process as required under the ADA; (2) accommodate Plaintiff under the ADA; or (3) hold his position open during his medical leave.

46.     Plaintiff believes and therefore avers that he was terminated from his employment with Defendants because of: (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and/or (4) Defendants' failure to engage in the

interactive process and/or to accommodate his disabilities (set forth *supra*).

47.    These actions as aforesaid constitute violations of the ADA

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**
**-Against All Defendants-**

48.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49.    Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

50.    Plaintiff requested leave from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

51.    Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment.

52.    Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

53.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

54.    Plaintiff was terminated in close proximity to his requests for a block medical leave to care for and treat his serious health conditions.

55.    Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) by making negative comments and/or taking actions towards him that would

dissuade a reasonable person from exercising his rights under the FMLA; and (5) failing to reinstate Plaintiff to the same or similar position upon being released to return to work from his FMLA leave.[2]

56.    These actions as aforesaid constitute violations of the FMLA.

**COUNT III**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**
**-Against All Defendants-**

57.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58.    Plaintiff properly exhausted his administrative remedies regarding his PHRA claims because he timely filed a charge of discrimination with the PHRC (by dual-filing his claims with the EEOC) and the charge has been pending for at least one year.

59.    The aforesaid allegations in Count I also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in his previous claims.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

---

[2] *See e.g. Keim v. AMTRAK*, 2007 U.S. Dist. LEXIS 54200 (E.D Pa. 2007)(even where an employee is given 12 weeks of FMLA leave eliminating an interference claim, it constitutes unlawful retaliation to deny him or her reinstatement to his prior role where it was feasible).

C.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.    Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.


Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**


By:    _/s/ Allison A. Barker_
       Ari R. Karpf, Esq.
       Allison A. Barker, Esq.
       Christa Levko, Esq.
       3331 Street Rd.
       Two Greenwood Square, Suite 128
       Bensalem, PA 19020
       (215) 639-0801

Dated:  May 19, 2023