## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIMOTHY KNAPP                               :
                    Plaintiff,        :        CIVIL ACTION NO.
                              :
    v.                                 :
                              :        22-cv-03758-RAL
THOMPSON GROUP, INC., et al       :
               Defendants.   :

**RICHARD A. LLORET**                               **December 19, 2023**
**U.S. Magistrate Judge**

### MEMORANDUM OPINION

      Plaintiff Timothy Knapp ("Plaintiff") filed this lawsuit after he was terminated by his employer upon the expiration of a period of approved absence under the Family Medical Leave Act. Mr. Knapp alleges that he was terminated due to his disability and in retaliation for his request for reasonable medical accommodations. *See* Doc. No. 13 at 6 ("Am. Compl.")[1]. Mr. Knapp's employer denies liability and alleges instead that Mr. Knapp was terminated for violating the company's absenteeism policy. *See* Doc. No. 19-1 at 7 ("Defs. Br."). Defendants Thompson Group, Inc., the Thompson Organization, Inc., and John G. Thompson (together, "Defendants"), have moved for Summary Judgment. *See* Doc. No. 19. Plaintiff has filed a response in opposition (Doc. No. 23) and Defendants have replied (Doc. No. 26). After careful consideration of the Parties' submissions, I will grant Defendants' Motion as to Plaintiff's claims under the Americans with Disabilities Act and the Pennsylvania Human Relations Act as well as his Family Medical Leave interference claim and I will deny Defendant's Motion as to Mr. Knapp's Family Medical Leave Act retaliation claim.

---

[1] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

**FACTUAL AND PROCEDURAL HISTORY**

**A.     Undisputed Facts**

Defendant Thompson Group, Inc. is a Pennsylvania Corporation which owns automobile dealerships throughout eastern Pennsylvania. *See* Doc. No. 19-5 at ¶ 1 ("Defs. SOF"); Doc. No. 23-2 at ¶ 1 ("Pl. SOF"). The Thompson Organization, Inc. is a fictitious name for Thompson Group, Inc. *Id.* Defendant John G. Thompson is the President of Thompson Toyota and the owner of the Thompson Group. *Id.* In addition to operating automobile dealerships, Defendants own several residential homes, commercial buildings, and industrial buildings in Pennsylvania. *Id.*

Plaintiff Timothy Knapp was hired by Defendants as a General Contractor on December 11, 2017. Defs. SOF at ¶ 2; Pl. SOF at ¶ 2. As a General Contractor, Mr. Knapp was responsible for completing a variety of general contractor duties at Defendants' Bucks County, Pennsylvania residential, commercial, and industrial properties. Defs. SOF at ¶ 3; Pl. SOF at ¶ 3. Mr. Knapp's responsibilities included checking on properties, making sure the heat was working, fixing problems that arose on properties, performing snowplowing, communicating with tenants, and performing other minor repairs. Defs. *Id.* Mr. Knapp's supervisors were John G. Thompson and Rob Arangio. Defs. SOF at ¶ 4; Pl. SOF at ¶ 4.

Mr. Knapp suffers from hypertension which places him at increased risk of stroke. Defs. SOF at ¶ 5; Pl. SOF at ¶ 5. On July 28, 2021, Mr. Knapp was working at a Thompson-owned property when he began to feel unwell and left work to go home for lunch. Defs. SOF at ¶¶ 6–7; Pl. SOF at ¶¶ 6–7. Later that day, he was taken by ambulance to the emergency room at Doylestown Hospital. Defs. SOF at ¶ 6; Pl. SOF

at ¶ 6. At the hospital, Mr. Knapp was informed that he was dehydrated and that his blood pressure was too high to return to work. Defs. SOF at ¶ 7; Pl. SOF at ¶ 7. Mr. Knapp notified Mr. Thompson that he was admitted to the hospital with high blood pressure. Defs. SOF at ¶ 9; Pl. SOF at ¶ 9. He remained in the hospital for two days, until he left against medical advice. Defs. SOF at ¶ 8; Pl. SOF at ¶ 8.

On July 30, 2021, Mr. Knapp sent a text message to Mr. Thompson indicating that he was home from the hospital and that he would provide a doctor's note to Defendants' Human Resources Director, Jennifer May. Defs. SOF at ¶ 10; Pl. SOF at ¶ 10. On August 4, 2021, Mr. Knapp sent Mr. Arangio a text message stating that he would send the doctor's note that afternoon and indicating he could return to work the next day. Defs. SOF at ¶ 12; Pl. SOF at ¶ 12. On August 5, 2021, Ms. May called Mr. Knapp to discuss his status and sent an email to Mr. Knapp explaining that he would need to provide a note from his treating doctor and submit to a fit-for-duty examination with a Thompson doctor before returning to work. Defs. SOF at ¶ 13; Pl. SOF at ¶ 13. Ms. May advised Mr. Knapp that he could apply for leave under the Family and Medical Leave Act ("FMLA") and provided him with FMLA paperwork to return by August 20, 2021. Defs. SOF at ¶ 14; Pl. SOF at ¶ 14.

Mr. Knapp was evaluated by his primary care provider, Nurse Practitioner, Khara Woehr ("NP Woehr"), who advised him that he should take time off work to get his blood pressure under control. Defs. SOF at ¶ 15; Pl. SOF at ¶ 15. On August 17, 2021, Mr. Knapp sent a text message to Ms. May and Mr. Thompson indicating that he had a follow-up appointment with NP Woehr scheduled for August 25, 2021, and that he hoped to set up a fit-for-duty examination with the Thompson doctor around the same time. Defs. SOF at ¶ 18; Pl. SOF at ¶ 18. At that point, Mr. Knapp expected that he would

be cleared to return to work around August 25, 2023. *Id.* Also on August 17, 2021, Mr. Knapp submitted FMLA paperwork indicating that he would be unable to work from July 27, 2021 through August 15, 2021. Defs. SOF at ¶ 19; Pl. SOF at ¶ 19.

On August 25, 2021, Mr. Knapp called Ms. May and advised her that, on the advice of NP Woehr, he would be out of work for another one or two weeks. Defs. SOF at ¶ 21; Pl. SOF at ¶ 21. Following that call, Ms. May sent Mr. Knapp an email explaining that NP Woehr had only certified his FMLA leave through August 15, 2021 and advising him that he would need to complete and return additional FMLA paperwork by September 9, 2021 or the additional time off would be considered unexcused. Defs. SOF at ¶ 22; Pl. SOF at ¶ 22. Ms. May also provided Mr. Knapp with a copy of his FMLA Designation Notice. Defs. SOF at ¶ 23; Pl. SOF at ¶ 23. Ms. May followed up via text message to confirm that she sent the additional paperwork. Defs. SOF at ¶ 24; Pl. SOF at ¶ 24. Mr. Knapp did not respond. *Id.*

On August 27, 2021, Ms. May sent another text message asking Mr. Knapp if he received the FMLA paperwork that she had sent two days earlier. Defs. SOF at ¶ 25; Pl. SOF at ¶ 25. Mr. Knapp responded to acknowledge that he received the paperwork. *Id.* Ms. May again advised Mr. Knapp that he needed to return the additional FMLA paperwork to ensure that any absences after his initial FMLA medical certification expired on August 14, 2021 would be covered. Defs. SOF at ¶ 26; Pl. SOF at ¶ 26.

On August 31, 2021, Mr. Knapp delivered the second set of FMLA paperwork to Ms. May which indicated that he was unable to work from August 15, 2021 through October 24, 2021. Defs. SOF at ¶ 27; Pl. SOF at ¶ 27. Mr. Knapp's FMLA leave expired on either October 19, 2021 or October 20, 2021. Defs. SOF at ¶ 28; Pl. SOF at ¶ 28.

4

However, Defendants approved Mr. Knapp to remain out of work through October 24, 2021. Defs. SOF at ¶ 30; Pl. SOF at ¶ 30.

On September 22, 2021, Mr. Knapp sent a text message to Ms. May providing an update on his medical condition and asking when he could stop by to drop off a check related to certain paycheck deductions. *Id.* In that message, Mr. Knapp indicated that he was pushing his doctors to get him back to work as soon as possible. *Id.*

On October 20, 2021, Mr. Knapp had a follow-up appointment with NP Woehr where he was evaluated to determine whether he could return to work. SOF at ¶ 32; Pl. SOF at ¶ 32. NP Woehr indicated that she would issue a note clearing Mr. Knapp to return to work provided that he had no chest pain, palpitations, syncope, dizziness, headaches, fatigue, weakness, diaphoresis, or blurred vision. *Id.* Mr. Knapp did not receive a copy of the note at this appointment. Defs. SOF at ¶ 33; Pl. SOF at ¶ 33.

On October 22, 2021, Mr. Knapp went to Ms. May's office to drop off another deductions check. Defs. SOF at ¶ 37; Pl. SOF at ¶ 37. Before Mr. Knapp left, Ms. May asked for his doctor's note. Defs. SOF at ¶ 38; Pl. SOF at ¶ 38. Mr. Knapp told Ms. May that he did not have a note but that he was cleared to return to work. *Id.* Ms. May informed Mr. Knapp that he needed to provide a note from his treating physician by Monday, October 25, 2021 in order to return to work. *Id.* Later that day, Mr. Knapp called NP Woehr's office and asked the receptionist to send his medical clearance directly to his employer. Defs. SOF at ¶ 39; Pl. SOF at ¶ 39. Mr. Knapp did not follow up with NP Woehr's office to verify that they sent the note. Defs. SOF at ¶¶ 42–43; Pl. SOF at ¶¶ 42–43. Nor did Mr. Knapp follow-up with Ms. May to confirm that she received the note. Defs. SOF at ¶ 41; Pl. SOF at ¶ 41.

Defendants' FMLA policy indicates that the company will assume an employee who fails to report to work promptly at the end of his approved leave period has voluntarily resigned. Defs. SOF at ¶ 49; Pl. SOF at ¶ 49. Mr. Knapp signed an acknowledgment form certifying that he was familiar with this policy. *Id.* Defendants' Employee Handbook also provides for disciplinary action, up to and including termination of employment, for any employee who engages in excessive absenteeism, absences without notice, overstaying approved leaves, or failure to properly notify supervisors of an anticipated tardiness, absence, or leave. Defs. SOF at ¶ 50; Pl. SOF at ¶ 50.

Mr. Knapp admits that he did not notify Defendants he would be absent on October 25, 2021 or October 26, 2021, however, he maintains that he was not scheduled to work those days since he had not yet been scheduled for his fit-for-duty examination. Defs. SOF at ¶ 51; Pl. SOF at ¶ 51. Mr. Knapp was terminated on October 26, 2021 and received a termination letter on October 28, 2021. Defs. SOF at ¶¶ 52, 55; Pl. SOF at ¶¶ 52, 55. The termination letter states, in pertinent part:

> This letter is in regards to your medical leave under FMLA. When you met with me on Friday, October 22, I explained to you that your 12 weeks of FMLA had been exhausted as of October 22, 2021. We were going to allow you to return on Monday, October 25, 2021, but only if you had a note from your treating doctor, releasing you to return to work. You assured me that you were getting a note from your doctor and would have it to me by Monday, October 25th. I explained Monday was the deadline and we could not hold your job as General Contractor open any longer, especially since you are the only person in that position in the Company and your FMLA leave was already exhausted.
>
> As of this morning, I have not heard from you and I did not receive any note from your treating doctor which would allow you to return to work. Since I have not heard from you since Friday, October 22nd, we are terminating your employment as of today, October 26th.

Defs. SOF at ¶ 53; Pl. SOF at ¶ 53.

**B.      Procedural History**

Mr. Knapp initiated this action on September 20, 2022, alleging violations of the Americans with Disabilities Act, 42 USC §§ 12101 ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. §§ 2601. *See* Doc. No. 1. On May 19, 2022, with consent from Defendants, Mr. Knapp amended his complaint to assert a claim for violations of the Pennsylvania Human Relations Act ("PHRA"). *See* Doc. No. 13 ("Am. Compl."). On September 29, 2023, following completion of discovery, Defendants moved for summary judgment. *See* Doc. No. 19.

Defendants seek summary judgment on each count of Plaintiff's Amended Complaint. Mr. Knapp opposes summary judgment, asserting that Defendants' arguments are meritless, or at the very least, there are factual disputes which should be resolved at trial. *See* Doc. No. 23 ("Pl. Br.").

STANDARD OF REVIEW

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no general issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is evidence from which a reasonable juror could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under the governing law. *See id.* I must draw all inferences and resolve all doubts in favor of the non-moving party. *Id.* at 255.

The moving party bears the initial burden of identifying those portions of the record that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the opposing party

must respond with facts of record that contradict the facts shown by the moving party. The opposing party may not simply deny the moving party's showing. *See id.* at 321 n.3. "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal citations omitted).

Where, as here, the opposing party is the plaintiff who bears the burden of proof at trial, the plaintiff must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* at 322–24; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.11 (1986) (quoting Fed. R. Civ. P. 56(e)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Anderson,* 477 U.S. at 249). The plaintiff's evidentiary showing "must amount to more than a scintilla[] but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (quoting *Williams v. Borough of West Chester,* 891 F.2d 458, 460–61 (3d Cir. 1989)). I may rely only on admissible evidence when evaluating the Parties' showings. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94–95 (3d Cir. 1999).

## DISCUSSION

Mr. Knapp's three-count Amended Complaint sets forth claims for discrimination, retaliation, and failure to accommodate under the ADA (Count I); retaliation and interference under the FMLA (Count II); and discrimination, retaliation,

and failure to accommodate under the PHRA (Count III). Defendants claim that they are entitled to summary judgment on all counts. I will address each claim in turn.

## A.    Plaintiff's ADA and PHRA Claims

Mr. Knapp claims that Defendants discriminated against him in violation of the ADA and the PHRA by terminating him without engaging in the interactive process required by the ADA and by failing to properly accommodate his disability. Am. Compl. ¶¶ 39–47. Mr. Knapp further alleges unlawful retaliation. *See id.* In their Motion for Summary Judgment, Defendants argue that they could not have discriminated against or failed to accommodate Mr. Knapp on the basis of disability because he is not disabled under the ADA. Defs. Br. at 12–15. Defendants further argue that Mr. Knapp has not established a causal link between his termination and any ADA protected activity. Defs. Br. at 25–27.

> 1.    *Mr. Knapp's disability discrimination and failure to accommodate claims fail because he has not established that he is disabled under the ADA.*

Mr. Knapp, who suffers from hypertension, alleges that the Defendants discriminated against him and failed to accommodate him under the ADA. Am. Compl. at ¶¶ 39–47. Defendants contend that Mr. Knapp cannot establish a *prima facie* case of disability discrimination or failure to accommodate because he cannot establish that he is a disabled person nor that he suffered an adverse employment decision as a result of discrimination. Defs. Br. at 12–24. I agree and grant summary judgment in Defendants' favor for the reasons outlined below.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, Mr. Knapp must show: "(1) he is a disabled person within the meaning of the [ADA]; (2) he is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Thimons v. PNC Bank N.A.*, 254 Fed. App'x 896, 897 (3d Cir. 2007). To establish an adverse employment action through a failure to accommodate, Mr. Knapp must show: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Both causes of action require a showing that the employee is disabled.

      a.    Mr. Knapp has not established that he is disabled under the ADA.

Although Mr. Knapp has indicated that he suffers from hypertension, he has failed to establish that his condition substantially limits him in any major life activity. In his Response, Mr. Knapp asserts that, due to his hypertension, he is unable to perform certain daily activities including "maintaining stabilized blood pressure, working, and lessened ability to pump blood from his heart to his body." Pl. Br. at 24. He also asserts that "life activities such as walking, standing, and breathing feel slower and harder to accomplish." *Id.* Defendants dispute that Mr. Knapp's impairment constitutes a disability and note that Mr. Knapp's own deposition testimony establishes that his high blood pressure "does not affect any of his major life activities." Def. Br. at 13–14.

"A person qualifies as 'disabled' under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Keyes v. Catholic Charities of the Archdiocese of Phila.,* 415 Fed. Appx. 405, 409 (3d Cir. 2011) (citing 42 U.S.C. § 12102(2)). The ADA defines "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(A). "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.'" *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018).

At his deposition, Mr. Knapp stated that his hypertension does not have any effect on what he can or cannot do in his daily life. Doc. No. 19-2 at JA 00040. He also stated that his hypertension does not affect his ability to work or to do any recreational activities. *Id.* Mr. Knapp further acknowledged that the essential functions of his job included the "ability to walk, stand long hours, drive, follow direction, physical labor, lifting up to 50 pounds, mechanical and general contracting" and noted that he was capable of performing each of those functions as of the date of his termination. *Id.* at JA 00041. Indeed, Mr. Knapp testified that, aside from his elevated blood pressure and increased risk of stroke, his hypertension does not have any effect on him (*id.* at JA 00040) and that he "never felt any different" as a result of his high blood pressure (*id.* at JA000022).

In contrast to his earlier deposition testimony, Mr. Knapp now claims that his hypertension does affect his ability to work and perform daily life activities. Pl. Br. at 24. To support that assertion, he submits a self-serving Affidavit which attempts to explain away his unfavorable deposition testimony by claiming that "on the day of [his] deposition [he] did not feel as though [his] hypertension was affecting [him] in the conventional sense of the term 'affect', as [he] did not feel any overt health symptoms that day" and that "at the exact time of [his] deposition [he] was able to work." Doc. No. 23-5 at JA 000551–52.

"When a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (affirming district court's decision to disregard affidavit where no satisfactory explanation was offered for the contradictory affidavit) (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007)). A reviewing court may disregard an affidavit that is "'entirely unsupported by the record and directly contrary to [other relevant] testimony,' or if it's 'clear' the affidavit was offered 'solely' to defeat summary judgment." *Daubert*, 861 F.3d at 392. "The timing of the affidavit, whether there is a plausible explanation for the contradictory statements, and whether there is independent evidence in the record supporting the affidavit, may be considered when determining whether an affidavit is a sham." *J.R. v. Lehigh Cnty.*, 534 Fed. Appx. 104, 108 (3d Cir. 2013) (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268–69 (3d Cir. 2010)).

Mr. Knapp was deposed on August 7, 2023 (Doc. No. 19-2 at JA 000001) but did not submit his Affidavit until October 27, 2023 (Doc. No. 23-5 at JA 000554) when he filed his Response in Opposition to Defendant's Motion for Summary Judgment. Mr. Knapp, who was represented by counsel, had the opportunity to explain his answers to Defendants' questions at his deposition. If he felt that his deposition testimony was inaccurate or otherwise erroneous, he had ample opportunity following the deposition to submit an errata sheet or other correction. Given the timing of Mr. Knapp's submission, it is fair to assume that the Affidavit was offered solely to defeat summary judgment, and so I may disregard it. *See Daubert*, 861 F.3d at 392.

Mr. Knapp points to no evidence in the record—aside from his own deposition, interrogatory responses, and affidavit—that suggests he is "disabled" within the meaning of the ADA. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). In evaluating whether summary judgment should be granted, I need only consider the cited materials. *Id.* at 56(c)(3). Mr. Knapp does not identify any medical records, affidavits from treating physicians, FMLA records, or other evidence regarding his physical condition. At most, Mr. Knapp has established that his hypertension puts him at an increased risk of stroke. Doc. No. 19-2 at JA 000040; Pl. SOF at ¶ 5. Without further evidence, I am unable to conclude that Mr. Knapp's increased stroke risk is enough to demonstrate that he suffers from a disability. Because Mr. Knapp conceded in his deposition that his hypertension did not affect his ability to work or to perform the activities of daily living, I am similarly unable to conclude that Mr. Knapp is substantially limited with regard to a major life activity.

b.    Mr. Knapp has not established that Defendants regarded him
as disabled under the ADA.

The fact that Mr. Knapp is not disabled does not end the inquiry, as Mr. Knapp

may still pursue ADA and PHRA claims if he can establish that he was "regarded as"

disabled by Defendants. An individual is "regarded as having such an impairment"

under the ADA if he "is subjected to a prohibited action because of an actual or

perceived physical or mental impairment, whether or not that impairment substantially

limits, or is perceived to substantially limit, a major life activity." 42 U.S.C.A. §

12102(3)(A). An employer regards an employee as disabled where it "misinterprets

information about an employee's limitations to conclude that the employee is incapable

of performing' his or her job requirements." *Ross v. Kraft Foods N. Am., Inc.*,

347 F. Supp. 2d 200, 204 (E.D. Pa. 2004) (Brody, J.). "When a plaintiff alleges a

perceived disability, the question is not the plaintiff's actual condition but rather [his]

condition as perceived by [his] employer, including the 'reactions and perceptions of the

persons interacting or working with [him].'" *Kelly v. Drexel Univ.*, 94 F.3d 102, 109

(3d Cir. 1996) "[T]he mere fact that an employer is aware of an employee's impairment

is insufficient to demonstrate either that the employer regarded the employee as

disabled or that perception caused the adverse employment action." *Gavurnik v. Home

Properties, L.P.*, 227 F. Supp. 3d 410, 419 (E.D. Pa. 2017) (Schiller, J.), *aff'd*,

712 F. App'x 170 (3d Cir. 2017).

Mr. Knapp alleges that Defendants "regarded" him as disabled when they

terminated him because they knew that he had hypertension which required a medical

leave of absence. Pl. Br. at 27. Defendants argue that Mr. Knapp is unable to establish

that Defendants "believed that he was substantially limited in performing a major life

activity due to an impairment." Defs. Br. at 15 n.4. Regardless, their "mere knowledge that Mr. Knapp was diagnosed with high blood pressure does not imply that [they] considered him disabled under the ADA." *Id.*

At most, the evidence here suggests that Defendants were aware that Mr. Knapp suffered from hypertension which required him to take FMLA leave. *See* Defs. SOF at ¶ 14; Pl. SOF at ¶ 14. Defendants knew that Mr. Knapp was authorized to take FMLA leave from July 27, 2021 through either October 19, 2021 or October 20, 2021. Defs. SOF at ¶¶ 14, 25–27; Pl. SOF at ¶¶ 14, 25–27. Defendants allowed Mr. Knapp to extend his leave to October 24, 2021. Defs. SOF at ¶ 30; Pl. SOF at ¶ 30. Defendants anticipated that Mr. Knapp would be cleared to return to work before October 24, 2021. Defs. SOF at ¶ 38; Pl. SOF at ¶ 38. Aside from requiring Mr. Knapp to receive medical clearances, Defendants never relayed any concerns about Mr. Knapp's ability to continue working for Defendants nor does the record indicate that any Defendant or anyone employed by the Defendants ever referred to Mr. Knapp as disabled.

For these reasons, Mr. Knapp cannot establish a *prima facie* case for either disability discrimination or failure to accommodate nor has Mr. Knapp shown any genuine issue of material fact precluding summary judgment in Defendants' favor. Therefore, I will grant Defendants' request for summary judgment on Plaintiff's claims for ADA discrimination and failure to accommodate in Count I.

2.    *Mr. Knapp's discrimination and failure to accommodate claims fail because he has not established that he is disabled within the meaning of the PHRA.*

Mr. Knapp's PHRA disability discrimination and failure to accommodate claims similarly cannot survive summary judgment. Under the PHRA, it is unlawful for an employer to discriminate against an individual on the basis of a non-job-related

15

handicap or disability. 43 Pa. Stat. Ann. § 955(a). The elements for a *prima facie* case of disability discrimination under the ADA and PHRA are essentially identical, however, the requirements to establish a "disability" under the statutes differ. *See Kelly*, 94 F.3d at 105.

The federal Americans with Disabilities Act was amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110−325, 122 Stat. 3553, in part, to expand the definition of "disability" under the ADA "in favor of broad coverage of individuals . . . to the maximum extent permitted by the [ADA]" Pub. L. No. 110−325, §§ 2(b)(1)−(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555; see 42 U.S.C. § 12102(4)(A). Prior to the ADAAA amendments, courts within our circuit analyzed ADA and PHRA claims simultaneously, given that the "PHRA [was] basically the same as the ADA in relevant respects, and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (quoting *Kelly*, 94 F.3d at 105). The Pennsylvania legislature has not amended the PHRA to similarly broaden the definition of "disability" and there appears to be some disagreement among federal and state courts in Pennsylvania as to whether the PHRA's definition of "disability" remains coextensive with the new ADA definition. *See Morgenfruh v. Larson Design Grp., Inc.,* No. 18-21, 2019 WL 4511711, at *2 n.37 (M.D. Pa. Sept. 19, 2019) ("The ADA and the PHRA were interpreted coextensively for disability discrimination claims prior to the enactment of the ADA Amendments Act (ADAAA) in 2008 . . . but neither the Pennsylvania Supreme Court nor the Third Circuit has provided guidance on whether the PHRA continues to be coextensive following the ADAAA's expansion of qualifying disabilities."), *aff'd*, 826 F. App'x 141 (3d Cir. 2020); *Gucker v. U.S. Steel Corp.*, 212 F. Supp. 3d 549, 559

(W.D. Pa. 2016) ("[D]istrict courts in the Third Circuit are split with respect to whether the ADA standard and the PHRA standard continue to be coextensive.").

I do not need to decide whether the PHRA and ADAAA remain coextensive to rule here. As explained above, Mr. Knapp has failed to establish that he is disabled under the more expansive ADAAA standard. Therefore, his disability discrimination and failure to accommodate claims necessarily fail under the stricter PHRA standard. Therefore, I will grant Defendants' request for summary judgment on Plaintiff's claims for PHRA discrimination and failure to accommodate in Count III.

3.   *Mr. Knapp's ADA and PHRA retaliation claims fail because he has not established that he engaged in protected conduct.*

"Unlike a plaintiff in an ADA [or PHRA] discrimination case, a plaintiff in an ADA [or PHRA] retaliation case need not establish that he is a 'qualified individual with a disability.'" *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997). [2] Mr. Knapp may pursue a retaliation claim even though he has failed to establish that he is disabled within the meaning of the ADA. To establish a *prima facie* case of retaliation under the ADA and PHRA, Mr. Knapp must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision. *See id.* at 500.

Defendants argue that Mr. Knapp's retaliation claims fail because Mr. Knapp cannot establish a causal connection between his protected activity and his termination. Defs. Br. at 25. Mr. Knapp disagrees and asserts that he has established causation

---

[2] Mr. Knapp brings retaliation claims under both the ADA and PHRA. While the standards for defining "disability" differ between the ADA and PHRA, the remaining elements of Mr. Knapp's ADA and PHRA claims are "essentially the same" and so the two claims may be analyzed together. *See Hanafy v. Hill Int'l, Inc.*, No. 22-878, 2023 WL 3010176, at *10 (E.D. Pa. Apr. 19, 2023) (Beetlestone, J.) ("To establish a *prima facie* case for retaliation, the elements under [] each statutory regime are 'essentially the same'").

through both direct and circumstantial evidence. Pl. Br. at 7–12. Because I find that
Mr. Knapp has not shown that he engaged in a protected activity, I need not address the
Parties' causation arguments.

An employee's good-faith request for an accommodation is protected activity
under the ADA's antiretaliation provision. *Shellenberger, v. Summit Bancorp, Inc.,*
318 F.3d 183, 188 (3d Cir. 2003). Mr. Knapp alleges that he engaged in protected
activity by "requesting and utilizing FMLA leave from July 28, 2021 until October 24,
2021" (Pl. Br. at 6) and when he "requested the additional accommodation of some
additional time to ensure Defendants received his medical clearance and scheduled his
return for duty appointment." (Pl. Br. at 7). The threshold question here is whether
either of these inquiries is a request for a reasonable accommodation. Such a request
"does not have to be in writing, be made by the employee, or formally invoke the magic
words 'reasonable accommodation'" but "must make clear that the employee wants
assistance for his or her disability." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313
(3d Cir. 1999).

Mr. Knapp first argues that he requested a reasonable accommodation by
"requesting and utilizing FMLA leave from July 28, 2021 until October 24, 2021."
Pl. Br. at 6. Courts within our circuit have recognized "that 'FMLA leave is not a
reasonable accommodation' under the ADA" but rather a request for protections under a

separate statute.³ *Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 340

(E.D. Pa. 2015) (Pappert, J.), *aff'd*, 847 F.3d 144 (3d Cir. 2017) (quoting *Rutt v. City of

Reading, Pa.*, No. 13-4559, 2014 WL 5390428, at *3 (E.D. Pa. Oct. 22, 2014)

(Stengel, J.). To establish retaliation, a plaintiff must instead "ma[ke] a request for a

reasonable accommodation separate from his request for FMLA leave." *Payne v. Woods

Services, Inc.*, 520 F. Supp. 3d 670, 680 (E.D. Pa. 2021) (Baylson, J.). Because

Mr. Knapp's request for FMLA leave is not a request for an accommodation under the

ADA, it cannot be considered protected activity for the purposes of his ADA or PHRA

retaliation claims.

Mr. Knapp also contends that he engaged in protected activity under the ADA by

requesting an accommodation of "additional time to ensure Defendants received his

medical clearance and scheduled his return for duty appointment." Pl. Br. at 6. Unlike

an initial request for FMLA leave, "once a plaintiff exhausts FMLA leave, a request for

an extended leave of absence is a request for a 'reasonable accommodation' pursuant to

the ADA." *McCall v. City of Philadelphia*, No. 11-5689, 2013 WL 5823873, at *22

(E.D. Pa. Oct. 29, 2013) (Buckwalter, J.), *aff'd*, 629 F. App'x 419 (3d Cir. 2015); *see also,

Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 647 (E.D. Pa. 2011)

(DuBois, J.) (noting that while defendants' failure to consider plaintiff's FMLA request

would not support an ADA claim, plaintiff's request for additional sick days following

---

³ This is because, by requesting FMLA leave, the employee is implicitly telling his employer that he has a "serious health condition that makes [him] unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. On the other hand, an employee who requests a reasonable accommodation under the ADA is telling his employer that he "can perform the essential functions of the employment position" with some accommodation. 42 U.S.C. § 12111. "Thus, an employee who requests leave does not clearly communicate to her employer that she is disabled and desires an accommodation." *Rutt*, 2014 WL 5390428, at *4 n. 11 (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010) (the employee must make clear that she wants an accommodation).

FMLA leave is a request for a reasonable accommodation). If Mr. Knapp could establish that he requested additional time following the expiration of his FMLA leave, a reasonable juror could conclude that he requested a reasonable accommodation under the ADA. Mr. Knapp has not made such a showing.

At his deposition, Mr. Knapp conceded that he did not request additional time after his FMLA leave expired to finalize his return paperwork. Doc. No. 19-2 at JA 000040. He also testified that, as of October 22, 2021, he did not need any additional recovery time before returning to work (*id*. at 000042). Per Mr. Knapp's own testimony, he never actually asked Defendants to push back his return date. His Response does not point to any evidence in the record indicating that he requested additional time to finalize his return paperwork. Indeed, the Affidavit[4] submitted with Mr. Knapp's Response states only that he "needed the reasonable accommodation of a few extra days to accomplish what Defendants were requiring of [him] by being cleared by Defendants' occupational health physician," not that he actually requested such an accommodation. Doc. No 24-3 at JA000553 at ¶ 20.

Because Mr. Knapp has failed to establish that he engaged in a protected ADA activity, he cannot establish a *prima facie* case of retaliation under the ADA or PHRA. Therefore, I will grant Defendants' request for summary judgment on Plaintiff's claims for ADA and PHRA retaliation in Counts I and III.

---

[4] Again, to the extent Mr. Knapp seeks to explain away his unfavorable deposition testimony by affidavit, I may disregard his affidavit if its allegations are both contrary to other relevant testimony and clearly offered solely to defeat summary judgment. *Daubert*, 861 F.3d at 392.

B.     **Mr. Knapp's FMLA Claims.**

Mr. Knapp further alleges Defendants violated the Family Medical Leave Act by terminating him for requesting and taking FMLA leave and to prevent him from taking FMLA-qualifying leave in the future, by considering Mr. Knapp's FMLA leave needs in making the decision to terminate him, by making negative comments and taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA, and by failing to reinstate him to the same or similar position upon his release to return to work. Am. Compl. ¶¶ 48–55. Defendants contend that the record does not support a finding that Mr. Knapp was terminated in retaliation for utilizing FMLA leave or that he was denied any FMLA benefits. Defs Br. at 24–30.

The FMLA "entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including the onset of a 'serious health condition' in an employee's spouse, child, or parent." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724 (2003) (citing 29 U.S.C. § 2612(a)(1)(C)). The statute contains "two relatively distinct provisions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). First, the FMLA prohibits an employer from taking action "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). Second, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. 29 U.S.C. § 2615(a)(2). Defendants have moved for summary judgment on both of Mr. Knapp's FMLA claims.

After careful consideration of the record, I find that Mr. Knapp's claim for retaliation should proceed as there are genuine issues of material fact concerning whether Defendants retaliated against him due to his assertion of his FMLA rights.

However, I find that Mr. Knapp's FMLA interference claim cannot proceed as Mr. Knapp had fully exhausted his benefits under the FMLA at the time of his termination.

      1.    *Defendants are not entitled to summary judgment on Plaintiff's FMLA retaliation claim.*

Mr. Knapp has raised a genuine issue of material fact as to whether he was terminated in retaliation for taking protected medical leave. As a result, Defendants are not entitled to summary judgment on Mr. Knapp's retaliation claim.

"To succeed on an FMLA retaliation claim, a plaintiff must show that "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in McDonnell Douglas[.]" *Lichtenstein*, 691 F.3d at 302.

Under the McDonald Douglass framework, the plaintiff has the initial burden of establishing a *prima facie* case of FMLA retaliation. If the plaintiff presents a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Lichtenstein*, 691 F.3d at 302. If the defendant meets this minimal burden, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory

reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994).

> a.   Mr. Knapp has established a *prima facie* case of FMLA retaliation.

Defendants concede that Mr. Knapp requested FMLA leave and that he was terminated shortly after that leave expired. Defs. Br. at 6–7. However, they argue that Mr. Knapp cannot demonstrate a causal connection between his request for leave and the decision to terminate him, as a matter of law. Defs. Br. at 24–27. In his Response, Mr. Knapp argues that the fact that he was terminated within days of the expiration of his FMLA leave in itself indicates causation. Pl. Br. at 8–12.

The Third Circuit has determined that "[w]hen the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'" *Lichtenstein*, 691 F.3d at 307. (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). While "there is no bright line rule as to what constitutes unduly suggestive temporal proximity" (*LeBoon*, 503 F.3d at 232), courts within our circuit have found a difference of a few days between the FMLA-protected activity and the adverse employment action to be sufficient to establish causation at the *prima facie* stage. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding causal link between protected activity and termination only two days later); *Lichtenstein*, 691 F.3d at 307 (finding seven days unduly suggestive).

Mr. Knapp alleges that his FMLA certification expired on October 24, 2021 and that he was terminated shortly after on October 26, 2021. Pl. Br. at 10. Given this timing, Mr. Knapp asks me to infer Defendants' intent to terminate him because he engaged in FMLA leave. Pl. Br. 10. Defendants instead suggest that proximity should be measured from July 28, 2021, the date Mr. Knapp first applied for FMLA leave. Defs. Br. at 25–26. Defendants urge that this three-month time lapse is too lengthy to support an inference of causation. *Id.*

I disagree with Defendants' suggestion that I must measure temporal proximity from the date Mr. Knapp requested FMLA leave. In support of their position, Defendants cite to Judge Pappert's opinion in *Capps v. Mondelez Global LLC*, 147 F. Supp. 3d 327 (E.D. Pa. 2015). In that case, Judge Pappert noted that "[c]ourts measure temporal proximity from the first date on which the litigant engaged in his protected activity." *Id. at 337*. For this proposition, Judge Pappert relied on an unpublished Third Circuit case, *Blakney v. City of Philadelphia*, 559 Fed. Appx. 183 (3d Cir. 2014) which states "[w]e measure temporal proximity from the date on which the litigant first files a complaint." *Id.* at 186.

*Blakney* is distinguishable here. The *Blakney* plaintiff did not allege FMLA retaliation, and so the opinion does not hold that the relevant date in an FMLA claim is the approval and start of FMLA leave. *See Blakney*, 559 F. App'x at 185 ("Blakney alleges unlawful retaliation under Title VII and the PHRA."). District courts within our circuit have instead chosen to measure temporal proximity in FMLA retaliation cases from the date the employee exhausted his FMLA leave. *See e.g. Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573 (E.D. Pa. 2017) (Goldberg, J.) (measuring temporal proximity from the date employee's FMLA leave expired); *Mackenzie v. Caplan*

24

*Industries, Inc.*, No. 19-371, 2019 WL 3284886 (E.D. Pa. July 19, 2019) (Kenney, J.)

(measuring temporal proximity from the last day of plaintiff's twelve-week FMLA

leave); *Madmen v. Thomas Jefferson University*, 462 F. Supp. 3d 518 (E.D. Pa. 2020)

(Beetlestone, J.) (measuring temporal proximity from the date plaintiff returned to work

after her leave); *Pierre v. Woods Servs., Inc.*, No. 20-5881, 2021 WL 84068

(E.D. Pa. Jan. 11, 2021) (Kearney, J.) (measuring proximity using the date plaintiff

became eligible to return to work).  Indeed, in *Capps*—the case Defendants use to

support their position that temporal proximity should be measured from the date the

employee requests FMLA leave—Judge Pappert evaluated causation using the last date

that the employee was out on FMLA leave. *See Capps*, 141 F. Supp. 3d at 337.

Having determined that the relevant date for determining causation is the end of

the FMLA leave period, I must now determine when Mr. Knapp exhausted his FMLA

leave. The Parties dispute which date Mr. Knapp fully exhausted his FMLA leave.

*Compare* Defs. Br. at 5 ("Mr. Knapp's FMLA leave was exhausted as of October 19,

2021") *with* Pl. Br. at 10 ("Mr. Knapp was engaging in protected activity each day he was

out on leave, up to October 24, 2021."). In their statements of facts, both parties

acknowledge that Mr. Knapp's twelve weeks of leave ran out on either October 19 or

October 20. Defs. SOF at ¶ 28; Pl. SOF at ¶ 28. However, because Mr. Knapp's second

set of FMLA paperwork indicated that he was unable to work from August 15 through

October 24, Defendants approved Mr. Knapp to remain out of work through October 24.

Defs. SOF at ¶¶ 27, 30; Pl. SOF at ¶¶ 27, 30. Viewing the facts in the light most favorable

to Mr. Knapp, for the purposes of this motion, I will consider October 24, 2021 as the

date on which Mr. Knapp exhausted his FMLA leave. Given that only two days expired

between October 24 and Mr. Knapp's termination on October 26, 2021, a reasonable

juror could conclude that the timing of Mr. Knapp's termination was "unusually suggestive" of a retaliatory motive and so they may infer a causal link between Mr. Knapp's FMLA leave and Defendants' adverse employment action. Accordingly, Mr. Knapp has established a *prima facie* case of FMLA retaliation.

> b.   There is a genuine issue of material fact as to whether Defendants had a nondiscriminatory reason for their decision to terminate Mr. Knapp.

Under the McDonnell Douglas framework, the burden now shifts to Defendants to articulate a facially legitimate, non-discriminatory reason for Mr. Knapp's termination. "Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Fuentes*, 32 F.3d at 763.

Defendants contend that their decision to terminate Mr. Knapp was "based upon his failure to provide the requested medial note from his treating physician clearing him to return to work by the deadline and his failure to return to work following his leave of absence." Defs. Br. at 27. I agree that Defendants have met their "relatively light" burden at this stage to articulate a legitimate non-discriminatory reason for their termination decision. *See Daniels v. Sch. Dist. of Philadelphia*, 982 F. Supp. 2d 462, 488 (E.D. Pa. 2013) (Bartle, J.), *aff'd*, 776 F.3d 181 (3d Cir. 2015) (finding employer met its burden where it established that it commenced termination proceedings against employee because she failed to return to work after she was cleared by a physician).

Therefore, the burden shifts back to Mr. Knapp to demonstrate pretext. To show that Defendants' proffered justification is merely pretextual, Mr. Knapp "'must point to

some evidence, direct or circumstantial, from which a factfinder could reasonably . . .

disbelieve the employer's articulated legitimate reasons.' To do so, [Mr. Knapp] 'must

demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in [Defendants'] proffered legitimate reasons for its actions that a

reasonable factfinder could rationally find them 'unworthy of credence.'" *Lichtenstein*,

691 F.3d at 310 (citing *Fuentes*, 32 F.3d at 764).

In his Response, Mr. Knapp raises a genuine dispute as to whether he was

actually absent from work on October 25, 2021. Mr. Knapp alleges that, because he had

not been cleared by the company physician, he was not scheduled to work on October 25

and so could not have "abandoned" his position by failing to appear. Pl. Br. at 14.

Defendants maintain that they expected Mr. Knapp to work on October 25 and

October 26 and that his failure to report constitutes job abandonment under their

absenteeism policy. Def. Br. at 7–8. This dispute cannot be resolved by the facts

available to me at this stage and, thus, will preclude summary judgment.

Mr. Knapp also raises circumstantial evidence that calls into question the

sincerity of Defendants' proffered reason for his termination. As discussed, for the

purposes of this motion, I will consider October 24, 2021 the date at which Mr. Knapp

exhausted his FMLA leave. Mr. Knapp alleges that the manner in which he was

terminated—immediately after his FMLA leave expired, with no notice or warning—

violates the termination procedures outlined in Defendants' Employee Handbook.

Pl. Br. at 10, 14.

Mr. Knapp was cleared by his medical provider to return to work in a letter dated

October 20, 2021. Defs. SOF at ¶ 32; Pl. SOF at ¶ 32. On October 22, 2021, Mr. Knapp

orally informed Ms. May that he was cleared to return to work after October 24, 2021.

Defs. SOF at ¶ 38; Pl. SOF at ¶ 38. That same day, Ms. May informed Mr. Knapp that he needed to submit a copy of his medical certification by October 25, 2021. *Id.* Defendants appear to concede that Mr. Knapp would not have been terminated had he submitted his medical clearance by October 25. Understanding this deadline, Mr. Knapp asked NP Woehr's office to submit a note to his employer. *Id.* The Parties agree that Mr. Knapp believed that NP Woehr had timely sent her note directly to Defendants. Defs. SOF at ¶ 43; Pl. SOF at ¶ 43. However, apparently inadvertently, Defendants did not receive Mr. Knapp's medical clearance by the agreed upon deadline. Rather than reach out to Mr. Knapp to ask the status of his medical clearance, Defendants initiated the termination process. Defs. SOF at ¶ 52; Pl. SOF at ¶ 52.

Mr. Knapp suggests that Defendants' promptness to terminate him, in violation of their own termination procedures, supports a finding that his termination was motivated by discriminatory animus. Pl. Br. at 10. Mr. Knapp further asserts that Defendants' representatives gave contradictory accounts of the events surrounding his termination including who made the decision to terminate him and when that decision was reached. *See* Pl. Br. at 13–14.

My role at this stage is not to evaluate the credibility of Mr. Knapp's presented evidence but to determine whether it genuinely places relevant facts in issue. *See Anderson*, 477 U.S. at 248–49. Viewing the record and drawing all reasonable inferences in the light most favorable to Mr. Knapp, I find there is a genuine issue of material fact as to whether Defendants' proffered reasons for their decision to terminate Mr. Knapp were their true reasons, or whether they were a pretext for retaliation under the FMLA. These inconsistencies and contradictions are sufficient to cause a reasonable juror to doubt Defendants' proffered reasons for Mr. Knapp's termination. *See*

*Lichtenstein*, 691 F.3d at 310. I also find that "the timing of [Defendants'] decision could lead a fact finder to infer that [Mr. Knapp] would not have been fired absent [his] taking of leave." *Lichtenstein*, 691 F.3d at 311 (quoting *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, at 806 (7th Cir. 2001)).

Therefore, I deny Defendants' request for summary judgment on Plaintiff's claim for FMLA retaliation in Count II.

> ### 2.   *Mr. Knapp's FMLA interference claim fails because Mr. Knapp had exhausted his FMLA leave at the time of his termination.*

Mr. Knapp cannot establish that Defendants interfered with his rights under the FMLA because his FMLA benefits were fully exhausted prior to his termination. To succeed on his FMLA interference claim, Mr. Knapp must establish that: (1) he was an eligible employee under the FMLA; (2) Defendants are an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice to the defendant of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Ross*, 755 F.3d at 191–92. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison*, 430 F.3d 120. "Because the FMLA [interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis is not required." *Ross*, 755 F.3d at 192. The Parties do not dispute that Mr. Knapp satisfies the first four elements of his FMLA interference claim and so I will focus my analysis on whether Mr. Knapp was denied benefits to which he was entitled under the FMLA. "These benefits include an employee's right 'to be restored by the employer to the position of employment held by the employee [or an equivalent position] when the leave commenced' at the conclusion of their FMLA leave." *Leathers*

*v. GlaxoSmithKline, LLC*, 2021 WL 1837436, at *3 (E.D. Pa. May 7, 2021) (Gallagher, J.) (quoting 29 U.S.C. § 2614(a)(1)).

Mr. Knapp's FMLA interference claim is premised on Defendants' "fail[ure] to reinstate [him] to the same or similar position upon being released to return to work from his FMLA leave." Am. Compl. at ¶ 55. Defendants note that Mr. Knapp applied and was approved for FMLA leave lasting from July 27, 2021 through October 24, 2021 and, thus, had exhausted his twelve weeks by October 24. Pl. Br. at 29. Defendants submit that Mr. Knapp's FMLA interference claim fails as a matter of law because Mr. Knapp was not entitled to any FMLA benefits at the time of his termination. Pl. Br. at 30. To support their argument, Defendants cite to Judge Joyner's opinion in *Dogmanits v. Cap. Blue Cross*, 413 F. Supp. 2d 452 (E.D. Pa. 2005) which notes that:

> [t]he FMLA requires that employees returning from up to 12 weeks of FMLA leave "be restored by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." However, employees who exhaust the twelve weeks of leave provided under the FMLA stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave.

*Id.* at 462 (quoting 29 U.S.C. § 2614(a)(1)).

In his Response, Mr. Knapp asserts that Defendants interfered with his ability to return to work by requiring that he submit his medical clearance paperwork immediately at the conclusion of his leave, by failing to proactively contact his medical provider after they did not receive a copy of his clearance by their October 25, 2021 deadline, and by requiring that he receive a second fitness-for-duty examination before returning to work. Pl. Br. at 15–19. Mr. Knapp further alleges that the facts underlying his retaliation claim also support his interference claim and notes that "'firing an

employee for [taking leave or making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee.'" Pl. Br. at 19 (quoting Third Circuit Model Jury Instructions Commentary, at Instruction 10.1.1). None of Mr. Knapp's arguments address the central inquiry of an FMLA interference claim: whether he was denied any FMLA benefits to which he was entitled.

It is undisputed that Mr. Knapp applied for and was approved for FMLA leave from July 27 through October 24. It is likewise undisputed that Mr. Knapp had fully exhausted his twelve weeks of FMLA leave by October 24.[5] Defendants sent Mr. Knapp a termination letter on October 26, 2021 which he received on October 28, 2021.

"Generally, courts within this Circuit and others have been reluctant to extend the ability of a Plaintiff to bring FMLA interference claims, or extending the FMLA's right to reinstatement beyond twelve weeks, when the employee takes leave beyond the twelve-week FMLA entitlement period and is subsequently terminated." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 529 (D.N.J. 2008) (granting summary judgment for defendants on FMLA interference claim where plaintiff was granted and utilized her twelve-week FMLA entitlement); *see e.g. Banner v. Fletcher*, 834 F. App'x 766, 769–70 (3d Cir. 2020) ("Because the record shows that [plaintiff] had exhausted her leave . . ., [defendant] is entitled to summary judgment on [the interference] claim."); *Panto v. Palmer Dialysis Center*, No. 01-6013,

---

[5] Defendants maintain that Mr. Knapp had exhausted his FMLA leave as of October 19, 2021, exactly twelve weeks after July 27, 2021, the date listed in his certification. Def. Br. at 29. Mr. Knapp asserts that his leave did not expire until October 20, 2021, twelve weeks after July 28, 2021, the date of his hospitalization. Pl. SOF at ¶ 28. In either event, the parties agree that Mr. Knapp had fully exhausted his allotted leave before October 24, 2021.

2003 WL 1818990, at *6 (E.D. Pa. Apr. 7, 2003) (Buckwalter, J.) ("Because [plaintiff] was not eligible for FMLA leave at the time her employment was terminated, she cannot establish an interference claim under the FMLA."); *Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 6667746, at *8 (E.D. Pa. Dec. 18, 2013) (Tucker, C.J.) (granting defendant summary judgment on FMLA interference claim where plaintiff had taken and exhausted his twelve weeks of FMLA leave when his employment was terminated).

Mr. Knapp had exhausted his benefits at the time of his termination, and therefore cannot establish an FMLA interference claim. Accordingly, I will grant Defendant's motion for summary judgment on the FMLA interference claim.

## CONCLUSION

For the reasons set forth above, Defendants Motion for Summary Judgment (Doc. No. 19) will be granted in part and denied in part. The Motion will be granted as to Plaintiff's ADA and PHRA claims in Counts I and III and Plaintiff's FMLA interference claim in Count II. The motion will be denied as to Plaintiff's FMLA retaliation claim in Count II. An appropriate Order will follow.

**BY THE COURT:**

*/s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**